Louis Ross *vs.* Albert C. Burrage.

Suffolk.   December 6, 7, 1920. — March 3, 1921.

Present: Rugg, C. J., Braley, Crosby, & Pierce, JJ.

*Equity Pleading and Practice*, Bill, Amendment.   *Rescript.*

Where a suit in equity to set aside a contract on the ground of certain specific alleged concealments, failures to disclose and misrepresentations, was referred to a master and was reserved for determination by this court upon reports by the master and exceptions by the defendant thereto and this court by its rescript denied to the plaintiff the relief he sought, a motion by the plaintiff after rescript to amend the bill by inserting a different ground for recovery, which, in prosecuting the suit on the grounds relied on in the original bill, he had deliberately put to one side until the adverse decision by this court, and a motion to recommit the master's report for further findings of fact as to the allegations contained in the proposed amendment, properly were denied.

Bill in equity, filed in the Supreme Judicial Court on May 28, 1913, by a mining engineer against a promoter of mining companies to set aside a contract between the plaintiff and the defendant, dated May 6, 1912, whereby the defendant secured an option on the plaintiff's interest in certain copper mining properties.

On June 27, 1913, the case was referred to a master "to hear the parties and their evidence, to find the facts and report the same to the court." The master's report and a supplemental report were filed on June 13 and September 23, 1918. The case came on to be heard before *Crosby*, J., and was reserved by him upon the pleadings, the master's report and supplemental report, and the defendant's exceptions thereto for determination by the full court, and a decision was rendered which is reported in 233 Mass. 439.

After rescript and before final decree, the plaintiff filed a motion to amend the bill by inserting therein, at the end of the first paragraph, in the section numbered 6 thereof, the following:

"Said agreement, [of May 6, 1912,] prepared by the defendant as aforesaid, provides that on May 6, 1913, the defendant will transfer and convey to the plaintiff 'five per cent (5%) of all securities, whether in the form of cash, bonds, preferred or common shares, accruing in any way to him as net profit from the exercise of such options on all such properties at said Chuquicamata or any extensions or alterations thereof, or from the sale or transfer thereof to other persons or corporations,' or that, at the sole option of the defendant, he will pay the plaintiff the sum of $100,000 cash, and then continues with the provision, in the alternative, that 'if said Albert C. Burrage shall not have given, assigned, transferred or conveyed his said options on said properties at Chuquicamata, or his interest therein,' then he will transfer to the plaintiff an undivided one-twentieth interest in all his said options on or interest in said properties, or instead thereof, at the sole option of the defendant, an undivided one-twentieth part of the common shares of a corporation holding such options and interest, the preferred stock to represent money actually expended for such options and interests or the developing of them.

"In a letter which the defendant wrote the plaintiff on May 3, 1912, presenting the first draft of said agreement to the plaintiff, the defendant made the following statement: 'I only want to call your attention to one thing, and that is that in the original letter of Sept. 14, 1910, you were only to receive five per cent. of such common shares as might come to me as profit, there being no agreement whatever as to your receiving any part of any cash, preferred stock or bonds which might come to me as profit. I think it would facilitate matters for me, as well as be a distinct advantage, to be able if I so wished to have an option upon your interest and for this reason I am willing to rearrange the understanding. In the contract which I have drawn up in accordance with our talk I have provided that the five per cent. shall also include cash, bonds and preferred shares, as well as common shares.'

"The plaintiff alleges that at the time when said agreement was prepared and presented to the plaintiff for his signature the defendant had sold, assigned, transferred, and conveyed all his

right, title, and interest in and to said options and all his interest in said properties at Chuquicamata to the Chile Exploration Company, a corporation formed for the purpose of exploring, acquiring, developing, working, disposing of, and otherwise dealing in and with mining property and claims, and particularly said copper-mining properties at Chuquicamata, Chile, and had received as net profit from such sale and transfer 5000 shares of the common stock of said corporation, and that the fact that he had done so was entirely without the plaintiff's knowledge; that the incorporation of the above-quoted provisions in said agreement of May 6, 1912, and the statement in said letter of May 3, 1912, by the defendant were in substance and effect representations that he had not at the time of the preparation and execution of the agreement of May 6, 1912, sold and transferred said options and interest, and that no securities had accrued to him as net profit from such sale or transfer; that said representations were false, were known to the defendant to be false, and were made by the defendant for the purpose of inducing the plaintiff to sign said agreement; that the plaintiff was entirely ignorant of the falsity of said representations and relied upon them as true, believing and having good cause to believe not only that no such transfer had been made, but that such a transfer would not be made before May 6, 1913, and being entirely ignorant of the fact that the defendant had already received securities as net profit from such transfer, and that he was induced to sign said agreement in reliance on said false and fraudulent misrepresentation.

"The plaintiff moves that his bill of complaint be amended also by inserting, 'The plaintiff further alleges, in the alternative, that there is ambiguity in the description of the securities which, by the agreement of May 6, 1912, the defendant agreed that he would transfer and convey to the plaintiff on May 6, 1913, unless he exercised his option to pay the plaintiff $100,000 cash; that if the words 'all securities, whether in the form of cash, bonds, preferred or common shares, accruing in any way to him as net profit' do not mean and were not intended by the defendant to mean securities thereafter accruing, they were at least plainly capable of that construction, and were so understood by the plaintiff, who was well justified in so understanding them, that the defendant, unless he intended to make a fraudulent misrepresentation

of the facts to the plaintiff, must have intended by said words to mean securities which had already accrued; that there was therefore no meeting of minds with respect to an essential feature of the agreement, and no binding contract between the parties. The plaintiff further alleges that if said agreement constituted a binding contract, it was founded on a material mistake of fact with respect to the transfer of said options and interest by the defendant and the receipt by him of said securities as net profit, for which mistake the defendant was responsible, and that the plaintiff is for this reason entitled to have said agreement cancelled and rescinded." ·

The plaintiff also filed after rescript and before final decree a motion that "the master's report be recommitted, and that the master be directed to find and report to the court the facts bearing on the question (as to which it appears by the opinion that no finding has been made), viz., whether or not the plaintiff, in signing the agreement of May 6, 1912, relied upon the misrepresentation of fact which the plaintiff claims is contained in said agreement; and further that the master find and report to the court all the facts material to the issues raised by the plaintiff's motion heretofore filed to amend his bill of complaint."

Material facts other than those reported in *Ross* v. *Burrage,* 233 Mass. 439, are stated in the opinion.

The motions were supported by affidavit and were heard by *De Courcy,* J. By his order there were entered an interlocutory decree denying both motions, and a final decree in accordance with the rescript, from both of which the plaintiff appealed.

*H. Parker,* (*A. Lincoln* with him,) for the plaintiff.

*B. B. Jones,* for the defendant.

·PIERCE, J. The plaintiff, after rescript and before final decree, filed motions to amend his bill of complaint and to recommit the bill to the master for further findings of fact. The motions were denied, a final decree in accordance with the rescript was entered, and the plaintiff appealed to this court.

This was a suit in equity to set aside a contract between the plaintiff and defendant, whereby the defendant secured an option on the plaintiff's interest in certain copper mining properties. The ground of relief on which the plaintiff relied was that in obtaining his interest from him the defendant, in the manner specified

and particularized in the bill of complaint, was guilty of conceal-
ments and failures to disclose and misrepresentations of material
and important facts, in breach of the duty of fidelity which the
defendant owed the plaintiff as a co-adventurer. The material
facts of this litigation are reported in *Ross* v. *Burrage,* 233 Mass.
439, and need not now be restated.

The opinion states that the master found that "no false repre-
sentations were made by the defendant to the plaintiff," and that
"the plaintiff makes no contention now on the issue of these
false representations." The opinion further decides that the re-
lation between the parties was that of employer and employee,
and not that of co-adventurers; and that the relation of the par-
ties was not fiduciary in the sense that there was a duty as between
them of disclosure. In relation to the facts set out in the motions
to amend and recommit, the opinion goes no farther than to in-
timate that the agreement might be construed to contain a mate-
rial misrepresentation of fact, if the words of that instrument
should be interpreted to speak in the sense and with the force
the plaintiff seeks to have ascribed to them; while it decides that
the court will not determine the materiality of the alleged mis-
representation, or, assuming a misrepresentation of fact, the
right of the plaintiff, if any, to relief in any form, in the ab-
sence of a finding that the plaintiff to his harm relied on that
misrepresentation.

The report of the proceedings before the master shows that he
did not determine as a fact that the words of the agreement were
a misrepresentation, because he thought the question was one of
law and not of fact, and because if it were a question of fact the
particular and distinct implied representation, alleged to be false,
was not charged in the bill as a representation made by the de-
fendant upon which the plaintiff relied. The report further dis-
closes much discussion relating to a possible motion to the court
for leave to amend the bill to include the specific charge. So
amended, it is plain the duty of the master would have required
of him a finding of fact, or possibly of law and fact, of the ques-
tion which the plaintiff now seeks to have determined upon re-
committal, after the allowance of his proposed amendment. Such
a motion was not made; the plaintiff apparently relying with ab-
solute confidence of victory upon his position that the failure of

the defendant to disclose to the plaintiff, when the contract was signed, that the defendant had then sold, assigned and transferred and conveyed "all his right, title, and interest in and to said options," was a breach of fiduciary duty, which the defendant owed the plaintiff, of such weight and importance as required a court of equity to rescind the agreement.

Should the plaintiff be permitted to prevail in his appeal, we perceive no reason why hereafter any plaintiff, who has failed in his action or defence through a mistaken reliance upon the supposed strength of his chosen weapons of offence or defence, should not with new weapons be permitted to attempt to defeat his adversary in new trials as often as both parties had ability and disposition to fight. That such is not the policy of the law is plain. A plaintiff or defendant who has once had a full opportunity to present his view of his case has had his day in court. Such is the situation of the plaintiff in the case at bar. It follows that the finding and order of the single justice disallowing the motions must stand, *Noyes* v. *Noyes*, 234 Mass. 397, and the final decree be affirmed.

*Ordered accordingly.*